STATE OF HAWAII, Plaintiff-Appellee,
v.
DONALD J. ISEKE, Defendant-Appellant
No. 27807.
Intermediate Court of Appeals of Hawaii.
August 29, 2008.
On the briefs: Mary Ann Barnard, for Defendant-Appellant.
Mark J. Bennett, Attorney General of Hawaii, Neil N. Murakami, Deputy Attorney General (Department of the Attorney General, State of Hawaii) for Plaintiff-Appellee.

MEMORANDUM OPINION
NAKAMURA, Presiding Judge, FUJISE and LEONARD, JJ.
Defendant-Appellant Donald J. Iseke (Iseke) appeals from a judgment of conviction and sentence for the offense of Violating Restraining Order or Injunction Against Harassment, in violation of Hawaii Revised Statutes (HRS) § 604-10.5(h) (Supp. 2005), filed on March 3, 2006 by the District Court of the First Circuit (District Court).[1] This case arose from Iseke's brief encounter with complainant, Scott K. Santiago (Santiago), on May 12, 2005, in front of a courtroom at District Court during the effective period of Santiago's restraining order against Iseke. On appeal, Iseke urges this Court to vacate his conviction and dismiss this case on the grounds that he did not validly waive his right to trial by jury and he did not receive effective assistance of his trial counsel.
I. RELEVANT FACTS
On May 11, 2004, the District Court filed an Order Granting Petition For Injunction Against Harassment (Injunction), restraining and enjoining Iseke from making any contact with Santiago for a period of three years from the date of filing. Iseke was served a copy of the Injunction.
On May 12, 2005, Iseke was in Courtroom 7B in District Court for another case in which he was accused of violating a restraining order against Santiago. In that other proceeding, Iseke's attorney, Brian Custer (Custer), instructed Iseke to leave the courtroom to look for a witness. The incident of this case arose when Iseke exited the courtroom door and saw Santiago sitting directly in front of the courtroom.
On June 30, 2005, Iseke was arraigned for the offense of Violating Restraining Order or Injunction Against Harassment. Iseke demanded a jury trial and the District Court committed him for trial by jury to the Circuit Court of the First Circuit (Circuit Court).
On July 8, 2005, Plaintiff-Appellee State of Hawai`i (State) filed a Complaint against Iseke, alleging he knowingly or intentionally violated the Injunction issued pursuant to HRS § 604-10.5, thereby committing the offense of Violating Restraining Order or Injunction Against Harassment, in violation of HRS § 604-10.5(h). Iseke pleaded not guilty in Circuit Court and trial was scheduled to commence on the week of August 29, 2005. However, on July 26, 2005, Iseke filed a Motion to Remand Case to the District Court of the First Circuit for Trial On the Merits (Motion to Remand), which was granted.
A bench trial commenced on September 14, 2005, in District Court. After the State's first witness testified, the District Court apparently discovered that Iseke had not waived his right to a jury trial. Counsel for the State informed the court that the defense moved to remand the case back to District Court. At that point, the District Court inquired of the purpose for the remand and instructed the parties to decide what they wanted to do (emphasis added):
THE COURT: And, was that with intention to waive jury trial . . . 
MR. INDIOLA [Iseke's attorney]: Well, . . .
THE COURT: . . . to remand it back, when you moved to remand it back here? Obviously that was  that usually is the intention. Otherwise, you wouldn't come back here in the first place. So, Mr. Indiola, was that with the intention of, on behalf of your client, Mr. Iseke, to come down and have the bench trial and not a jury trial, or what? Otherwise, at this point you, you know, without saying so much, here we are started the trial and Mr. Iseke hasn't been given his right to a jury trial. So, there's obviously a violation here.
MR. INDIOLA: Violation of?
THE COURT: Well, I'm not gonna' tell you. The Court is here. It's just a referee.
MR. INDIOLA: Hmm. Oh . . .
THE COURT: You guys decide what you wanna' do, and then the Court will listen and make a decision. So, you can either  off the record. I'll see you guys.
Later, the District Court reconvened and held the following colloquy with Iseke to determine the voluntariness and understanding of his waiver:
THE COURT: Okay. All right. We're back on the record in case number 28. Let the record reflect the presence of the two  the attorneys and Mr. Iseke. Okay. Now, I think we resolved the issue here, Mr. Iseke. Usually we try to take care of this before we start trial. But, we're gonna'  doing it after we start. But, in any event, we  here we are. Mr. Iseke, I have you  this waiver-of-jury-trial form here and it appears to have your signature on it. Is this your signature, sir?
MR. ISEKE: Yes, it is, Your Honor.
THE COURT: All right. Now, before you signed this form did you have your lawyer go over all the information of this waiver-of-jury form regarding your right to have a jury trial in the case that we have here this morning?
MR. ISEKE: It is, Your Honor.
THE COURT: And, do you understand what your right to a jury trial [sic]?
MR. ISEKE: I do.
THE COURT: Okay. And, anybody force you or threaten you to sign this form giving up your right to have a jury trial in the case that we have this morning?
MR. ISEKE: No, Your Honor.
THE COURT: Okay. All right. The Court will accept the waiver of jury trial. Okay. Thank you, sir. All right.
The Waiver of Jury Trial form (Written Waiver) explained the significance of a jury trial and the consequence of a waiver: (1) defendant has a right to be tried by a jury of not less than twelve members of the community; (2) the twelve jurors must reach an unanimous verdict of guilty beyond a reasonable doubt before an entry of conviction; (3) defendant would have an opportunity to help select the jurors; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. Iseke's attorney also signed the Written Waiver, certifying that he had explained the Written Waiver to Iseke, believed Iseke understood the document in its entirety, the statements therein conformed with his understanding of Iseke's position, and Iseke voluntarily and intelligently signed the waiver understanding the nature of the charges against him and the consequences of the waiver.
On January 10, 2006, trial resumed. Various testimony was presented by both the prosecution and defense regarding the May 12, 2005 incident outside of Courtroom 7B. Although acknowledging the conflicting evidence regarding the brief, nonphysical, contact between Iseke and Santiago, the District Court found Iseke guilty of violating the Injunction. On February 28, 2006 the District Court sentenced Iseke to one year of probation, three months of imprisonment, anger management assessment and treatment, a $300 fine, a $50 criminal injuries compensation fee, a $75 probation fee, and ordered Iseke to stay away from Santiago while on probation. On March 7, 2006, Iseke timely filed a Notice of Appeal.
II. POINTS ON APPEAL
Iseke raises the following points on appeal:
1. The Court lacked jurisdiction over this remanded case because Iseke did not validly waive his right to a jury trial through a purported waiver after arraignment and after the first witness had testified;
and
2. Defense counsel rendered ineffective assistance for mistake of law as to the elements of the offense, filing a frivolous pretrial motion, failing to adequately cross-examine, and detrimentally recommending waiver of jury trial.
III. STANDARDS OF REVIEW
A. Waiver of the Right to Jury Trial
"The validity of a criminal defendant's waiver of his or her right to a jury trial presents a question of state and federal constitutional law." State v. Myers, 108 Hawaii 300, 303, 119 P.3d 608, 611 (App. 2005) (citation and internal quotation marks omitted). "Questions of constitutional law are reviewed de novo under the right/wrong standard, with the appellate court exercising its own independent constitutional judgment based on the facts of the case." Id. (brackets omitted).
B. Ineffective Assistance of Counsel
The applicable standard in assessing claims of ineffective assistance of counsel is whether, viewed as a whole, the assistance provided was within the range of competence demanded of attorneys in criminal cases. State v. De Guair, 108 Hawai`i 179, 187, 118 P.3d 662, 670 (2005) (citation omitted).
IV. DISCUSSION
A. Iseke's Jury Trial Waiver
It is undisputed that Iseke had a constitutional right to trial by jury in this case. The issue is whether he validly waived that right.
Iseke argues that his jury trial waiver was invalid because: (1) the timing of the waiver, after the first witness had testified, rendered the waiver procedurally defective;[2] (2) the reasons given by Iseke's counsel for the remand to District Court, and thus the waiver of a jury trial, were inherently prejudicial to the defense; and (3) under these circumstances, the District Court's inquiry to Iseke, concerning whether his waiver was knowing, intelligent, and voluntary, was inadequate.
"Under Hawai`i law, a criminal defendant's waiver of his or her constitutional right to a jury trial must be a knowing, intelligent, and voluntary relinquishment of a known right." Myers, 108 Hawai`i at 303, 119 P.3d at 611 (citations and internal quotation marks omitted). To determine whether a defendant voluntarily and intelligently waived his right to a jury trial, appellate courts look to the totality of facts and circumstances of, each particular case, taking into account the defendant's representation by capable counsel, the trial court's confirmation of the defendant's waiver, and the defendant's indication that he understood the advisement. Id. at 304-05, 119 P.3d at 612-13. Where the record shows that a defendant voluntarily waived this constitutional right, the defendant carries the burden of demonstrating by a preponderance of the evidence that the waiver was involuntary. Id. at 304, 119 P.3d at 612.
In order to ensure a valid waiver of the right to a jury trial, the trial court has a duty to inform the accused of that constitutional right. Id. To inform the defendant of this right, the trial court engages in a colloquy with the defendant. The colloquy serves several purposes: "(1) it more effectively insures voluntary, knowing and intelligent waivers; (2) it promotes judicial economy by avoiding challenges to the validity of waivers on appeal; and (3) it emphasizes to the defendant the seriousness of the decision." Id. (citation and internal quotation marks omitted). Thus, the failure to obtain a valid waiver of this fundamental right constitutes reversible error. Id. (citation omitted).
In the instant case, Iseke signed the Written Waiver, which informed Iseke of the following: (1) twelve members of the community compose a jury; (2) the defendant may take part in jury selection; (3) a jury verdict must be unanimous; and (4) the judge of the District Court alone decides guilt or innocence if the defendant waives a jury trial. During its colloquy with Iseke, the District Court confirmed that Iseke signed the Written Waiver, Iseke's attorney reviewed the information in the Written Waiver with Iseke before Iseke signed it, and Iseke understood his right to a jury trial. Iseke also informed the District Court, upon inquiry, that no one forced or threatened him to sign the Written Waiver. Iseke's attorney signed the Written Waiver certifying that he explained the form to Iseke, believed Iseke understood the document in its entirety, the statements contained therein were in agreement with Iseke's position, and believed Iseke waived his right to a jury trial voluntarily and with intelligent understanding of the nature of the charge against him and the consequences of the waiver.
Iseke fails to direct this Court to any "salient fact" bearing upon his ability to understand his jury waiver that would require a more extensive colloquy by the District Court. State v. Barros, 105 Hawaii 160, 169, 95 P.3d 14, 23 (App. 2004). Instead, Iseke argues that because he did not waive his right to a jury trial for any tactical reason and because his original reasons for remanding the case to District Court did not work out the judge should have further questioned his rationale for the jury trial waiver. We disagree. Iseke does not show by a preponderance of the evidence that his waiver was involuntary or without sufficient knowledge or understanding of the rights waived. Iseke identifies no authority for the proposition that a trial judge's failure to investigate the reasoning of a jury waiver can render an otherwise knowing, intelligent, and voluntary waiver invalid. Therefore, under the circumstances of this case, we do not conclude that the District Court's colloquy was unduly cursory or otherwise inadequate. See Meyers, 108 Hawai`i at 304, 119 P.3d at 612.
Thus, we are left with Iseke's argument that the waiver was untimely. Iseke relies, in large part, on Hawaii Rules of Penal Procedure (HRPP) Rule 5(b)(3), which provides:
(3) JURY TRIAL ELECTION . In appropriate cases, the defendant shall be tried by jury in the circuit court unless the defendant waives in writing or orally in open court the right to trial by jury. If the defendant does not waive the right to a trial by jury at or before the time of entry of a plea of not guilty, the court shall commit the defendant to the circuit court for trial by jury. Within 7 days after the district court's oral order of commitment (i) the district court shall sign its written order of commitment, (ii) the clerk shall enter the district court's written order, and (iii) the clerk shall transmit to the circuit court all papers in the proceeding and any bail deposited with the district court; provided, however, that if trial by jury is waived in the circuit court, the proceedings may be remanded to the district court for disposition.
We note, however, that this case was committed to the circuit court for trial by jury. Iseke thereafter sought remand to the District Court. Iseke's attorney explained to the District Court, "The practical effect of asking for the remand, we understood, will be [sic] to waive the jury trial. To have a trial in district court." It appears from the record that Iseke's attorney believed that the jury trial was waived in the circuit court, but that the District Court was unable to confirm that waiver from its review of the record of the circuit court proceedings. The District Court stopped the trial, gave Iseke and his attorney an opportunity to further discuss the jury waiver, and received both the Written Waiver and verbal confirmation in open court before proceeding with the trial. Under these circumstances, we reject Iseke's argument that the timing of his otherwise valid waiver rendered it constitutionally infirm.
For these reasons, we conclude that the District Court properly accepted Iseke's waiver of jury trial. In light of this conclusion, we do not reach Iseke's double jeopardy argument.
B. Alleged Ineffective Assistance of Counsel
A defendant bears the burden of establishing ineffective assistance of counsel and must prove: (1) there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and (2) such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. Wilton v. State, 116 Hawaii 106, 110, 170 P.3d 357, 361 (2007) (citations omitted).
Iseke contends that his trial counsel's errors denied him effective assistance of counsel, specifically: (1) failing to properly advise Iseke on the option of a bench or jury trial; (2) filing a frivolous pre-trial motion instead of a pre-trial motion to dismiss on the ground of a de minimis infraction; (3) failing to obtain a pre-trial evidentiary ruling; and (4) failing to argue the correct elements of the offense.
1. Assistance related to jury waiver
Iseke claims that his "case was inherently more appropriate for a trial by jury because the charge was for a violation of the district court's own order." The State counters that Iseke "is only speculating that a jury trial would have rendered a more favorable result." Iseke does not cite to any part of the record to support or otherwise support the argument that a jury trial would possibly present a more favorable result. See Wilton, 116 Hawaii at 118, 170 P.3d at 369. Iseke asserts, however, without citation, that "a trial by jury gives a criminal defendant a strong statistical advantage of winning." Even if this claim were supported, it would not suffice to establish ineffective assistance of counsel in every case involving a jury trial waiver. Iseke claims that his attorney detrimentally advised him to remand the case to District Court and, later, to proceed with a bench trial although the initial reasons no longer existed. However, the record on appeal shows that counsel discussed with Iseke the effect of waiving a jury trial when they both signed the Written Waiver and Iseke unequivocally told the District Court he understood he was waiving his right to a jury trial. Without more, we cannot conclude that the advice to proceed with a bench trial fell below "the range of competence demanded of attorneys in criminal cases." See Dan v. State, 76 Hawai`i 423, 427, 879 P.2d 528, 532 (1994).
2. The pre-trial motion to dismiss
Iseke argues that the motion to dismiss complaint filed by his attorney was frivolous because it "amounted to no more than engaging in a character assassination of the complainant." Instead, Iseke suggests that counsel should have filed a motion to dismiss on de minimis grounds pursuant to HRS § 702-236 (1993).[3] This argument is without merit. The record on appeal demonstrates a consistent attempt by counsel to establish that the complaining witness was motivated to exaggerate his account of Iseke's conduct. Although this strategy failed, it was not so frivolous and prejudicial that it impaired Iseke's defense. The record also shows that the de minimis argument was raised at the close of the prosecution's case-in-chief, during closing arguments, and after the District Court found Iseke guilty of the offense charged.
Counsel's failure to file a pre-trial motion to dismiss based on a de minimis infraction did not deprive Iseke of the de minimis defense and does not support Iseke's claim of ineffective assistance of counsel.
3. Pre-trial evidentiary ruling
Although the argument is not entirely clear, Iseke seems to contend that his attorney should have obtained a pretrial evidentiary ruling by explaining, in writing, the relevance of Santiago's TRO history, which stemmed from the fact that Santiago was the "other man" in a love triangle with Iseke's wife. The record demonstrates, however, that Iseke's lawyer repeatedly tried to introduce such evidence through crossexamination of Santiago and through examination of Iseke's wife. Despite counsel's arguments, the District Court ruled that such evidence was irrelevant to the issue of whether Iseke's conduct outside of Courtroom 7B violated the Injunction. Thus, the failure to raise the issue in a pre-trial motion could not have deprived Iseke of a potentially meritorious defense.
4. Mistake of law
Iseke contends that trial counsel's "closing arguments evinced a failure to understand the statutory elements of the offense[.]" He argues that trial counsel incorrectly focused on the issue of Iseke's conduct not meeting the statutory definition of "harassment" under HRS § 604-10.5. Iseke asserts that the issue was not harassment, but rather "contact" under the terms of the Injunction,[4] such as whether the brief eye contact and body language qualified as contact, and if so, whether the contact was a de minimis infraction under HRS § 702-236. Iseke also argues that trial counsel should have argued that Iseke did not possess the requisite state of mind, intent or knowledge, under HRS § 604-10.5.
Iseke's argument is without merit because his trial counsel did reach the issue of contact and state of mind in closing argument. Trial counsel argued that Iseke lacked the requisite intent to make contact because he exited the courtroom at the instruction of his other counsel to look for a witness, and eye contact was inadvertently made with Santiago because Santiago was sitting in front of the courtroom doors. Trial counsel also addressed the credibility of the complaining witness and the prosecution's argument that Iseke's clicking noises demonstrated intent to harass by explaining that Iseke was adjusting his loose-fitting teeth. The fact that other arguments could have been made to further explain Iseke's gestures, posturing, body language, and facial expressions does not amount to ineffective assistance of counsel in this case. Counsel's closing argument on the issue of harassment did not deprive Iseke of a potentially meritorious defense.
Viewed as a whole, counsel's assistance with regard to all the issues presented was within the range of competence demanded of attorneys in criminal cases. De Guair, 108 Hawaii at 187, 118 P.3d at 670. We therefore conclude that Iseke was not denied his constitutional right to effective assistance of counsel.
V. CONCLUSION
Based on the foregoing reasons, we affirm the District Court's March 3, 2006 conviction and sentence of Iseke for the offense of Violating Restraining Order or Injunction Against Harassment, in violation of HRS § 604-10.5(h).
NOTES
[1] The Honorable Fa'auuga To`oto`o presided.
[2] In conjunction with this argument, Iseke argues that the lack of a prior jury waiver deprived the District Court of jurisdiction over his trial. However, he failed to provide any authority for or cogent argument in support of this proposition.
[3] §702-236 De minimis infractions. (1) The court may dismiss a prosecution if, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds that the defendant's conduct:

(a) Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the offense; or
(b) Did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or
(c) Presents such other extenuations that it cannot reasonably be regarded as envisaged by the legislature in forbidding the offense.
(2) The court shall not dismiss a prosecution under subsection(1)(c) of this section without filing a written statement of its reasons.
[4] The Injunction prohibited contact, and defined contact to include, but not limited to communication by "telephone, mail, facsimile, pager, electronic mail, internet, etc."